### *In re* VINCENT KERRIEL.

No. A-2635.    Opinion Filed May 20, 1916.

(157 Pac. 369.)

1.  **HABEAS CORPUS—Proceedings—Burden of Proof.** Upon an application for writ of habeas corpus to be let to bail after commitment for a capital offense by an examining magistrate, the burden is upon the petitioner to show facts sufficient to entitle him to bail, when those facts do not appear from the evidence adduced on the part of the prosecution.

2.  **BAIL—Proceedings—Evidence—Sufficiency.** If upon a consideration of all the evidence introduced on the application for bail the court is of the opinion that it is insufficient to create a reasonable doubt of the petitioner's guilt of a capital offense, bail will be refused.

3.  **HABEAS CORPUS — Proceedings — Evidence — Sufficiency.** Evidence examined and held sufficient to justify a refusal of bail to petitioner in custody upon two separate charges of murder.

*From District Court, Coal County;*
*Hon. J. H. Linebaugh, Judge.*

Application of Vincent Kerriel for writ of *habeas corpus* to be let to bail. Writ denied and bail refused.

*George Trice,* for petitioner.

*R. McMillan,* Asst. Atty. Gen., for the respondent.

PER CURIAM.    Vincent Kerriel has filed in this court a petition wherein he alleges that he is illegally confined and restrained of his liberty at Coalgate by Jesse Phillips, sheriff of Coal county, and that his illegal confinement and detention consist in this, to-wit: "That petitioner was charged with murder in each of two cases before R. B. Davidson, justice of the peace in and for Coalgate district; and that a preliminary examination was held in each of said cases and petitioner was held to answer said charges to the District Court of Coal county, Oklahoma, and that thereafter upon a hearing before Hon. J. H. Linebaugh, district

judge of Coal county, said judge refused to allow petitioner bail; and that petitioner is now held by virtue of the commitments issued by the justice of the peace aforesaid," and praying that he be admitted to bail upon the ground that the proof of his guilt is not evident nor the presumption thereof great.

. A transcript of the testimony taken upon the preliminary examinations is annexed to and made a part of his petition; also the affidavit of petitioner and the affidavit of his wife, setting forth the facts and circumstances attending the commission of the homicides.

It appears from the evidence that the petitioner with his family resided at Cottonwood, a suburb of Coalgate; that he and his wife occasionally sold intoxicating liquors and made and sold Choctaw beer; that on the evening of Saturday the 11th day of December, 1915, E. C. Cogburn with his two brothers N. J. and A. D. went to the home of the petitioner and bought some Choctaw beer. After drinking the beer N. J. Cogburn went out to where his horse was and A. D. Cogburn with his brother L. C. Cogburn went down in the cellar to drink some more beer. As he was returning to the house the petitioner shot N. J. Cogburn and then went to the cellar door and shot A. D. Cogburn. N. J. Cogburn was taken to Oklahoma City for medical treatment where he died three days later. His dying declaration is as follows:

"Oklahoma City. Okla.

December 14, 1915. 8.30 P. M.

I, N. J. Cogburn knowing that I am mortally wounded and that I will die in a few hours wish to make this my dying statement as to how I got shot. On Saturday evening December 11, 1915 I, with my brothers A. D. and L. C. went to Vincent Kerriels to get some beer. We asked Mrs. Kerriel if she had any beer and as there were some Indians in the room drunk she took us aside and said 'we have some in the cellar' and told us that we would have to go down there as she did not want the Indian boys to have any more beer. L. C. taken the light and A. D. followed and went into the cellar. I went out to see about my horse after we drank some beer. When I came back I asked Vincent Kerriel

for another can of beer and he shot me then; when I asked him for some beer he just pulled down and shot me with a shotgun in the left side. I remember one shot after I was shot. Vincent's boy had a gun in his hand when I came back from my horse. Vincent Kerriel had his gun too. After I was shot I ran to my horse and tried to get on him, but I could not. He was right close to me when he shot me. Neither of my brothers nor I were the least bit drunk and went quietly for a drink: Neither of my brothers nor I had a gun or weapon of any kind, and I made no movement with my hand towards my pocket for one. I was shot entirely without warning and if I had been armed could not have time to make a move to get it.

Question by B. B. Sanders: 'Was any proposal made or effort made by you or your brothers to insult or assault Mrs. Kerriel?

Answer: No, neither I nor either of my brothers said a single word out of the way to the woman except to ask for beer when we first went, and later when we asked for more. Neither of us took hold of or offered to take hold of her at any time. All were in a good humor until the shooting occurred and it was sudden. We bought and drank some beer and I paid for it. I paid Mrs. Vincent for it right at the time. I am almost gone but am in my right mind.

his<br>X<br>N. J. Cogburn.<br>mark

Witnesses to this statement and subscribed thereto.

John E. DuMars,<br>B. B. Sanders,<br>L. C. Cogburn."

The dying declaration of A. D. Cogburn is as follows:

"Coalgate Okla.

Dec. 12-1915.

I, A. D. Cogburn, realize that I am in a bad condition and that I am more than likely to die, I want to make a statement as to how I got hurt. I am shot, Vincent Kerriel shot me with a gun. I did not see the gun, I was at his house and in his cellar when he shot me, I had no trouble with him before he shot me. I was about the middle of the cellar and Vincent Kerriel was in front in the mouth of the cellar. My brother L. C. Cogburn was

in the cellar with me; we were drinking beer; we had no trouble with him nor with any other person. I heard a racket at the front of the cellar and I looked up and saw Vincent Kerriel and I saw him shoot me. It was a shot gun. I heard one shot just a little bit before I was shot. I was not drunk. We had bought some Choctaw beer from his wife Marie. I did not have any pistol nor any other weapon. Neither of my brothers had any weapon. I do not think there was any person there when I got shot except my brothers and Vincent and wife and their boy were the only persons present when I got shot. Vincent did not say a word to me before he shot me. After he shot me he run off, and I did not see him any more after that. My brother L. C. helped me out of the cellar.

his<br>
X<br>
A. D. Cogburn<br>
mark<br>
G. T. Ralls."

The petitioner's supplemental affidavit, omitting title and verification is as follows:

"My name is Vincent Kerriel. I am the petitioner in this case. I am the one who is charged with murder. My home is near Number 2, about a mile from Coalgate. I have lived there about eight years. My family consists of myself, my wife and four children. My oldest child is fourteen years old, and my youngest, four years. I was born in France. I have lived in the United States thirteen or fourteen years.

I knew the two men who were killed at my place last December. I knew one of them about four years, and the other one since last summer. They were killed at my place. They had been at my place twice before the time of the killing. One time I was at home when they were there. They were drunk each time they were there. Each time they came they insulted my wife by using dirty language and catching hold of her. She was afraid of them. I was afraid of them. I wanted them to stay away from my place. I was convicted of selling Choctaw beer, and I wanted everybody to stay away from my place. Frank Baker and two other men came to my place, and when I tried to make them go away, they beat me with knucks. Frank Bristow and Bud Thompson came to my place, and when I tried to make them leave, they hit me with a six shooter, and hurt me very badly. They were tried in Court, and put under bond.

On the night of the killing the two men that were killed and their brother came to my house about seven o'clock. They were drunk when they came. I was at home. When these men came Alfred Noah and his son and Albert Perkins were there. The Cogburns told them to leave. One of the Cogburns said he was an officer, and would arrest Alfred Noah if he did not leave. These men acted very rough. They were drunk, and had a bottle of whisky. They wanted some lunch, and they sent my boy to a store for some lunch. My wife gave them a brink of beer. They asked for more beer, and my wife would not give it to them. They talked rough to her, and took hold of her. I went into the kitchen where they were. They asked me if I had a gun. I told them no. They asked me if I had a knife. I told them no. They asked me if I wanted to fight. I told them I did not. I was afraid. My wife told me to get out of the kitchen. She said she was afraid these men would hurt me. They spoke about Frank Bristow. One of them said he was a good man, and that I was not good. They pulled my wife's clothing, and told her they intended to do what they pleased with her. I was in the next room, but I was afraid to do anything. I thought these men would kill me if I tried to protect my wife. She was crying. She took her baby in her arms and ran off. These three men followed her from the kitchen. I thought that they were going to do her some harm. They went out at the back door. I do not know where my wife went to. I got my shot gun. I went out the front door. I was very badly scared and excited. I aimed to protect my wife. When I started out the front door, one of these men came towards me. He put his hand behind him. I thought he was trying to get a gun. I shot him because I thought he would kill me if I did not. The other two men had gone down into the cellar. These men had said they were armed. I shot at them. I thought they would come out of the cellar and follow my wife and kill me. I shot to protect my home, myself and my family. I was badly excited and scared. I do not know when these men went down into the cellar, and I did not know but that my wife was down there, and they had followed her there."

The settled rule of this court is that upon an application for bail by writ of *habeas corpus* after commitment for a capital offense by an examining magistrate, the burden is upon the petitioner to show facts sufficient to entitle him to bail, when these facts do not appear from the evidence adduced on the part of the prosecution, and if upon a consideration of all the evidence

introduced on the application for bail the court is of the opinion that it is insufficient to create a reasonable doubt of the petitioner's guilt of a capital offense, bail will be refused.

Ex parte Beville, 6th Okla. Cr. 145, 117 Pac. 725;

Ex parte Dykes, and cases therein collated, 6th Okla. Cr. 162, 117 Pac. 724.

Upon a consideration of all the evidence presented in support of the application in this case we are of opinion that it is insufficient to create a reasonable doubt of the petitioner's guilt of the crime of murder in either case. It is therefore considered and adjudged that the writ be denied and bail refused.